IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| SANDRA HERNDEN,<br>an individual,<br><br>      Plaintiff,<br><br>v.<br><br>CHIPPEWA VALLEY SCHOOLS BOARD<br>OF EDUCATION, a government body,<br>FRANK BEDNARD, in his official capacity as<br>President of Chippewa Valley Schools and in<br>his individual capacity, and ELIZABETH<br>PYDEN, in her official capacity of Secretary of<br>Chippewa Valley Schools and in her individual<br>capacity.<br><br>      Defendants. | Case No.:<br><br>COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF UNDER 42<br>U.S.C. § 1983 AND DAMAGES 42 U.S.C.<br>§ 1988. |

**Stephen A. Delie (P80209)**
**Derk Wilcox (P66177)**
**Patrick Wright (P54052)**
Mackinac Center for Public Policy
Attorneys for Plaintiff
140 West Main Street
Midland, MI 48640
(989) 631-0900 – voice
(989) 631-0964 – fax

---

**VERIFIED COMPLAINT**

---

NOW COMES Plaintiff, Sandra Hernden, by and through her attorneys, the Mackinac Center Legal Foundation, and for her Complaint alleges and states as follows:

**INTRODUCTION AND PARTIES**

1. This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff Hernden as a result of the acts, conduct, and policies of Chippewa Valley Board of Schools (the "Board") and its respective members, employees, representatives, and agents.

2. Plaintiff is the mother to a special-needs child who was previously being educated in the Chippewa Valley School system.

3. Defendant Chippewa Valley Board of Schools is a seven-member legislative body elected by residents of the Chippewa Valley school district. The Board is a government entity responsible for developing policies applicable to schools that are members of the school district.

4. Defendant Bednard is a member of the Board, and currently serves as its president. Upon information and belief, Defendant Bednard is a resident of Macomb County, Michigan.

5. Defendant Pyden is a member of the Board, and currently serves as its secretary. Upon information and belief, Defendant Pyden is a resident of Macomb County, Michigan.

6. All individually-named Defendants are sued in their official and personal capacities.

7. The Board has the authority to create, change, and enforce policies of the Chippewa Valley School District.

**JURISDICTION AND VENUE**

8. The Plaintiff hereby incorporates the preceding paragraph as though fully restated herein.

9. This is a civil rights action under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

10. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

11. This Court has authority to grant declaratory and other relief under 28 U.S.C. §§ 2201 and 2202; and the authority to grant injunctive relief pursuant to 28 U.S.C. 1343 and FED. R. Civ. P. 65, and costs and attorneys' fees under 42 U.S.C. § 1988.

12. Venue is appropriate under 28 U.S.C. § 1391(b) in the Eastern District of Michigan, Southern Division, as the wrongful actions herein alleged occurred in Macomb County, the Board is a public entity located and exercising its authority in that county, and, upon information and belief, the individual Defendants reside within that county, which is within the Eastern District of Michigan, Southern Division.

13. The acts complained of herein constitute retaliation against Plaintiff's exercise of her free speech rights as protected by the First Amendment as incorporated by the Fourteenth Amendment of the United States Constitution.

## GENERAL ALLEGATIONS

14. Plaintiff is a police officer, and the mother to a special-needs student who previously was being educated in Chippewa Valley Schools in Clinton Township, Macomb County, Michigan.

15. During the COVID-19 pandemic, Plaintiff's son's academic performance declined significantly, with his GPA dropping from 3.5 to 1.5.

16. Plaintiff attributed the cause of her son's academic and social decline to the lack of in-person instruction available during the pandemic and, as a result, became a vocal opponent to COVID-19 policies requiring remote learning.

17. To register her objections to these policies, Plaintiff began to contact Defendants via zoom, attend in-person meetings of the school board, and e-mail Defendants.

18. Plaintiff increasingly came to see Defendants' decisions as politically motivated, and challenged both their motives, and their opposition to policies permitting in-person learning. With respect to Defendant Elizabeth Pyden, these challenges eventually became heated, leading to a tense relationship between her and Plaintiff.

19. On December 11, 2020, Defendant Pyden forwarded a series of e-mails between Plaintiff and herself to Plaintiff's then-supervisor, challenging Plaintiff's conduct as unbecoming of a police officer. **Exhibit A, Pyden Complaint.**

20. Plaintiff's supervisor then ordered an investigation to determine whether Plaintiff had violated any departmental rules. *Id.*

21. Plaintiff was not disciplined for departmental rule violations, although an investigation was ordered. *Id.*

22. Plaintiff continued to challenge Board policy via e-mail and in public comments portion of the Board's meetings. In one such e-mail, Plaintiff linked to a news story about a 6th Circuit decision on public comment procedures which held that certain restrictions on public comment violated the First Amendment. She then cautioned the board to take additional care when interrupting her public comments. **Exhibit B, DOJ E-mails.**

23. The subsequent day, Defendant Bednard advised the other members of the Board that he had forwarded Plaintiff's e-mail, and a complaint regarding Plaintiff and Mothers of Liberty[1] to the Department of Justice. *Id.*

24. On October 5, 2021, Defendant Bednard emailed a correspondence that, upon information and belief, appears to have been sent to the DOJ. Defendant Bednard's referral, in part, stated

---

[1] Upon information and belief, this is intended to be a reference to Moms for Liberty, a 501(c)(4) non-profit organization advocating for parental rights in schools. Neither Mothers of Liberty nor Moms for Liberty is a party to this action.

"Anything that could be done to curb this behavior by these people would be greatly appreciated by our board, administration, and our community." *Id.*

25. Plaintiff exercised her First Amendment rights by petitioning the government for a redress of her grievances. In return, Defendants filed a complaint with Plaintiff's then-supervisor and made a referral to the Department of Justice for potential criminal investigation. In so doing, Defendant's unlawfully retaliated against Plaintiff's exercise of her First Amendment Rights.

## COUNT I

*Against all Defendants.*

### VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS BY RETALIATION

26. Plaintiff hereby incorporates the preceding paragraphs as though fully restated herein.

27. On November 3, 2020, Plaintiff e-mailed the Board, expressing her displeasure at the Board and the impact of its policy decisions relating to the COVID-19 pandemic, specifically, its decision to adopt a "hybrid model" of education and the effects it has had on students and families within the Chippewa Valley School District. **Exhibit A.**

28. The Board's policies relating to education in the Chippewa Valley School District are matters of government policy.

29. Plaintiff's November 3, 2020 e-mail was protected conduct, as Plaintiff was addressing members of a public body regarding the impacts of governmental policymaking.

30. On December 10, 2020, Plaintiff sent the Board an editorial which, in part, argued that science did not support the closing of schools. *Id.*[2] Plaintiff's e-mail contained no additional message.

---

[2] The column itself is not relevant to this action, but for the convenience of the parties and this Court, said column is available at the following hyperlink:
https://www.chicagotribune.com/columns/john-kass/ct-coronavirus-schools-kass-20201210-kityu45m2jfh5hyd6vcfreizeu-story.html?fbclid+lwAR0O0RdBXx467U039UVh9jUiD7z6-tpa57QaBpFl9iD9ircM3VT69z_UP7A.

31. That same day, Defendant Pyden responded to Plaintiff, agreeing that everyone wanted their children back in school, but that it could only be done when safety could be guaranteed. *Id.*

32. Plaintiff subsequently responded to Defendant Pyden's e-mail later that day. Plaintiff argued that the Defendant Pyden's policy decisions were improperly motivated by a political agenda, that the Board's decisions failed to account for a high COVID-19 survival rate, and that the Board was ignoring the concerns of parents. *Id.*

33. Defendant Pyden responded later that evening by indicating Plaintiff's e-mail was disrespectful, represented a personal attack, and was inappropriate. Defendant Pyyden then indicated she would not further engage with Plaintiff until she was able to "discuss this situation without personal attacks and misinformation." *Id.*

34. Plaintiff responded on December 11, 2020 by stating that the Board did not have the respect of the community, challenging the asserting that her prior e-mails constituted a personal attack, and stating the Board and its members were answerable to the community. *Id.*

35. Upon information and belief, Defendant Pyden did not respond to Plaintiff's December 11 correspondence. Instead, Defendant Pyden forwarded the chain of e-mails between herself and Plaintiff to Plaintiff's then-supervisor, along with a message deploring her conduct. *Id.*

36. Defendant Pyden's December 11, 2020 criticism read as follows:

Dear Chief Smith:

I am writing with a concern regarding how one of your officers conducts herself in her own community. As you know, return to school has been a hotly contested issue, however, we must do what is best for the community at large. I have noticed that in fact your city hall has closed indefinitely to assist in stopping the community spread. As an elected official, I do expect criticism. I also expect people to disagree with me. However, I do not expect the level of disrespect, even after being asked to stop, that has been shown by one of your public safety officers, Sandra Hernden. As a public servant, more is expected. I do not believe that you would like anyone expressing this level of anger, disrespect and veiled racism in your community. I have attached the exchange below. There have also been calls into our meeting, although I do believe there may have been some connection issues. I am disappointed that this

type of behavior has been repeatedly rewarded with service awards. While I do not expect you to take any adverse action, I do believe that it is important for you to know how one of your officers is conducting herself within the community and perhaps offer some guidance.

Thank you for your attention to this matter. May you and your family have a blessed holiday season.

Elizabeth Pyden

*Id.*

37. "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citations omitted).

38. Plaintiff's opposition to the Board's COVID-19 policies, and to Defendant Pyden's support of those policies, was opposition to matters of government policy.

39. Plaintiff's correspondence with Defendant Pyden and the Board constituted a petition to the government for a redress of grievances.

40. Plaintiff's correspondence with Defendant Pyden and the Board is speech protected by the First Amendment, as incorporated by the Fourteenth Amendment.

41. Defendant Pydens's complaint to Plaintiff's supervisor was an adverse action against Plaintiff, and was calculated to lead to the potential investigation and/or discipline of Plaintiff by her employer.

42. A person of ordinary firmness would be dissuaded from engaging in protected conduct if such conduct were likely to lead to a potential investigation and/or discipline by their employer.

43. Defendant Pyden's actions were causally connected to Plaintiff's protected activity, as Defendant Pyden's complaint explicitly references Plaintiff's protected activity, and, in fact, includes examples of that activity.

44. The fact that Defendant Pyden's complaint was sent the same day as Plaintiff's response to her prior e-mail further suggests a causal connection between Plaintiff's conduct and Defendant Pyden's retaliation.

45. Defendant Pyden's complaint to Plaintiff's then-supervisor unlawfully retailed against Plaintiff for the exercise of her First Amendment rights.

46. The right to be free from retaliation for the exercise of First Amendment activity is clearly established. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394-398 (6th Cir. 1999).

47. Defendant Pyden's actions were taken under color of state law. Defendant Pyden's e-mail references her status as an elected official, and the complaint itself is based on Plaintiff's conduct in redressing her grievances with Defendant Pyden's policy decisions.

48. Despite Defendant Pyden's actions, Plaintiff did continue to exercise her First Amendment right to oppose the Board's policies.

49. On October 4, 2021, Plaintiff messaged the Board by providing a hyperlink to a 6th Circuit case that had determined another school board had violated a parent's rights through rules regarding public comment.[3] **Exhibit B.**

50. The remainder of Plaintiff's e-mail containing the hyperlink reads as follows:

"Once again, law on parents (sic) side. Maybe a lil (sic) more due care and caution at the next meeting Frank. You know, when you let your hatred you have for me take hold and you interrupt me.

1st 2 were free…"

---

[3] The case referenced in the article is *Ison v. Madison Local School District Board of Education*, Case No. 20-4108 (6th Cir., 2021).

**Exhibit B**.

51. Plaintiff's e-mail was an implied threat of legal action against the Board and/or its individual members for perceived violations of Plaintiff's First Amendment rights during public comments at the Board's public meetings.

52. On October 5, 2021, Defendant Bednard e-mailed the other members of the Board with an e-mail that reads:

"Hello,

FYI. I forwarded this email (below) from Sandra Hernden along with a complaint about her and Mothers of Liberty (sic) to Department of Justice.

Frank B."

*Id.*

53. On October 5, 2021, Defendant Bednard e-mailed "Ronald, Roberts," with, what upon information and belief, appears to be a message transmitted to the DOJ. Defendant Bednard's e-mail forwarded Plaintiff's October 4, 2021 communication, and included the following message:

Hello DOJ,

I appreciate your looking into these groups of people who bring such threats to anybody that stands in their way. The email I included below is from Sandra Hernden. This woman, Sandra Hernden, comes to every meeting to harass our board, administration, and community who oppose her views. She is over dramatic, and refuses to listen to any direction I may give her about her inappropriate and threatening comments. Last week she compared the tattoos Nazi Germany gave Jewish people to identify them in WW2 to Masking mandate of today (even though mask are not mandated in our district). We understand that Sandra has no children in our schools, is not a resident of our district, and goes around to school board meetings throughout the tri county area to promote her agenda in any way she can including threats and intimidation. She is part of a group called, "Mothers of Liberty" that attend our meetings. This group of people attend every meeting, and because their threats and demeanor are so intimidating, no community members who oppose their message will come to the meeting to speak because they are afraid of what this group would do to them for standing up to them.

Our school district has over 15,000 students. We know that they have not gained any traction as it is the same 10-15 people that show up every meeting to intimidate, threaten, and harass.

Anything that could be done to curb this behavior by these people would be greatly appreciated by our Board, administration, and community.

*Id.* (errors original).

54. Plaintiff's message to the Board was protected First Amendment conduct. Plaintiff expressed her belief that the Board's application of its rules regarding public comment violated her First Amendment rights, and her message was intended to express her willingness to sue for those violations.

55. Defendant Bednard's referring Plaintiff to the DOJ is an adverse action against Plaintiff.

56. A criminal referral to the Federal Government is likely to deter a person of ordinary firmness from continuing to engage in the protected conduct giving rise to that referral. That is particularly true in this instance, given that Attorney General Merrick Garland had issued a memorandum only the day before, in which he indicated the DOJ's willingness to investigate and prosecute individuals who harassed or intimidated school board members. **Exhibit C, Attorney General Memorandum.**

57. Defendant Bednard's referral of Plaintiff to the DOJ was causally connected to her protected conduct. Defendant Bednard's October 5 e-mails specifically references Plaintiff's e-mail, and in fact includes it as part of his message. **Exhibit B.**

58. In referring Plaintiff to the DOJ, Defendant Bednard unlawfully retaliated against Plaintiff's exercise of her First Amendment rights as incorporated by the 14th Amendment.

59. The right to be free from retaliation for the exercise of First Amendment activity is clearly established. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394-398 (6th Cir. 1999).

60. Defendant Bednard's referral was an official act of the Board taken under color of law. Defendant Bednard's e-mail acknowledging the referral was sent to the Board as a whole, and

it reflects joint action by each of its members. This e-mail reflects a collective decision of the Board, as well as Defendant Bednard individually.

61. "Governmental officials performing discretionary functions are entitled to qualified immunity when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818; 102 S.Ct. 2727 (1982).

62. Given that the individual Defendants' actions violated a clearly defined constitutional right, the Defendants are not entitled to qualified immunity and may be held liable in their personal capacity.

## RELIEF REQUESTED

Plaintiff, Sandra Hernden, based on the wrongful acts set forth above, requests this Court enter a judgment in her favor against all Defendants, seeks against Defendants all appropriate damages arising out of law, equity, and fact, requests that the Court enjoin Defendants from further retaliation against Plaintiff, award Plaintiff her attorneys' fees, interest, and costs, and award any declaratory, equitable, and/or injunctive relief this Court determines to be just and equitable to remedy Defendants' improper infringement of Plaintiff's First Amendment rights.

Dated: September 29, 2022

/s/
Stephen A. Delie (P80209)
Mackinac Center Legal Foundation
140 W. Main St.
Midland, MI 48642
(989) 698-1969
delie@mackinac.org
P80209

## DECLARATION UNDER PENALTY OF PERJURY

I, Sandra Hernden, a citizen of the United States and a resident of the State of Michigan, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the forgoing Complaint, and it is true and correct to the best of my knowledge (except as to statements made on information and belief), and that the forgoing statements that pertain to me are based on personal knowledge.

Executed this day of September 28, 2022 at

Sandra Hernden

Subscribed and sworn to before me, this 28th day of Sep. 20 22.

Isabella A. Collins
Notary Public, Macomb County, Michigan
My Commission Expires Sept 20, 2026
Acting in Macomb County

ISABELLA A. COLLINS
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF MACOMB
My Commission Expires Sept. 20, 2026
Acting in the County of Macomb