UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA HERNDEN,

                                                            Civil Case No. 22-cv-12313

      Plaintiff,

vs.                                                          HON. MARK A. GOLDSMITH

CHIPPEWA VALLEY SCHOOLS, et al.,

      Defendants.

_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (Dkt. 17)

Before the Court is the motion to dismiss filed by school district Chippewa Valley Schools (Dkt. 17).[1]  The District seeks to dismiss Plaintiff Sandra Hernden's claims of municipal liability based on the alleged First Amendment violations of two school board members.  For the reasons that follow, the Court grants the District's motion in part and denies the District's motion in part.[2]

---

[1] Hernden named as Defendant the Chippewa Valley Schools Board of Education; however, the District responds on behalf of the Board, asserting that, as a matter of state law, "a school board, as opposed to a school district, is not a corporate body which may sue or be sued."  Mot. at 5 (quoting Carlson v. N. Dearborn Heights Bd. of Educ., 403 N.W.2d 598, 605 (Mich. Ct. App. 1987)).  Hernden does not dispute the District's assertion.  Because Hernden does not dispute the District's contention that the Board is not itself a proper party, the Court agrees that the proper entity to be subject to this suit is the District, not the Board.  The District does not seek dismissal on this basis; rather, it notes that it was "inappropriate[]" for Hernden to sue the Board, and it captions its motion with the District as the "correctly designated" party.  Id.

[2] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to the District's motion, the briefing includes Hernden's response (Dkt. 19) and the District's reply (Dkt. 20).

# I. BACKGROUND

Hernden alleges that she is a police officer and the mother of a child who was educated in the Chippewa Valley school system in Clinton Township, Michigan.  See Compl. ¶ 14 (Dkt. 1). The Board allegedly implemented policies that limited in-person instruction during the COVID pandemic, and Hernden expressed her opposition to these policies by contacting members of the Board via Zoom, email, and in-person Board meetings.  Id.  ¶¶ 16–18, 22.

On December 11, 2020, Defendant Elizabeth Pyden—a member of the Board serving as its secretary—allegedly forwarded a series of emails between Hernden and Pyden to Hernden's "then-supervisor, challenging Plaintiff's conduct as unbecoming of a police officer."  Id. ¶¶ 5, 19 (citing Pyden Email (Dkt. 1-2) (reflecting that Pyden forwarded email between herself and Hernden to Vincent Smith, director for Harper Woods Department of Public Safety, on December 11, 2020)).  Hernden submits that her supervisor then commenced an investigation to determine whether Hernden had violated any departmental rules, though Hernden was not disciplined.  Id. ¶ 20.

In a subsequent email to the Board, Hernden allegedly "cautioned" the Board against "interrupting her public comments" and suggested that doing so violated the First Amendment. Id. ¶ 22.  In Hernden's view, this email constituted "an implied threat of legal action against the Board and/or its individual members for perceived violations of Plaintiff's First Amendment rights during public comments at the Board's public meetings."  Id. ¶ 51.

Hernden alleges that Defendant Frank Bednard—member and president of the Board— then forwarded Hernden's email to the United States Department of Justice (DOJ) with a complaint about her behavior.  Id. ¶¶ 5, 23–24 (citing Bednard Email (Dkt. 1-3)).  Bednard also informed the other members of the Board about his communication with the DOJ.  Id. ¶ 23.  The email from

Bednard reflects that, on October 5, 2021, Bednard wrote an email addressed to "DOJ" that contained the following assertions, and then shared this communication with the Board members listserv:

> I appreciate your looking into these groups of people who bring such threats to anybody that stands in their way. The email I included below is from Sandra Hernden. This woman, Sandra Hernden, comes to every meeting to harass our board, administration, and community. . . .
>
> We know that [Hernden and the group "Mothers of Liberty"] have not gained any traction as it is the same 10-15 people that show up every meeting to intimidate, threaten, and harass. Anything that could be done to curb this behavior by these people would be greatly appreciated by our board, administration, and our community.

Bednard Email at PageID.26. Bednard included his title under his signature: "President, Chippewa Valley Schools Board of Education." Id. Hernden now alleges:

> Defendant Bednard's referral [to the DOJ] was an official act of the Board taken under color of law. Defendant Bednard's e-mail acknowledging the referral was sent to the Board as a whole, and it reflects joint action by each of its members. This e-mail reflects a collective decision of the Board, as well as Defendant Bednard individually.

Compl. ¶ 60.

Hernden brings claims under the First Amendment pursuant to 42 U.S.C. § 1983 against Pyden, Bednard, and the District for their alleged acts of retaliation—i.e., Pyden's email to Smith and Bednard's email to the DOJ—in response to Hernden's exercise of her free speech. Id. ¶¶ 26–62. Now before the Court is the District's motion to dismiss, which argues that Hernden cannot establish municipal liability against the District under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

## II. ANALYSIS[3]

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (finding that county was liable under Monell where county prosecutor directed sheriffs' actions that violated Fourth Amendment).

In the District's view, "[c]onspicuously absent from Plaintiff's Complaint . . . is any allegation that the Board of Education or the School District as an entity retaliated against Plaintiff in any manner." Mot. at 8.[4]  The parties debate the merits of two theories under which the District is potentially liable for the retaliatory acts alleged by Hernden: (i) Bednard's email to the DOJ constituted official Board policy, and (ii) the Board maintained a policy of inaction toward First Amendment violations.[5]

---

[3] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007).  The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. Id.

[4] The District states that Hernden will not be able to establish any underlying constitutional violations taken by the board members, but the motion to dismiss does not present arguments that Hernden's allegations are insufficient to establish that Pyder and Bednard violated the First Amendment; rather, the District argues that, "[a]ssuming Plaintiff could establish" that Pyder and Bednard did so, Hernden's allegations remain insufficient to establish liability for the Board or District.  Mot. at 12.

[5] Though the District asserts that the Board is not properly named as Defendant as a matter of state law, see Br. in Supp. Mot. at 5, the District also acknowledges that the Board is capable of taking official actions that bind the District for Monell purposes, id. at 8, 13–14.  The Court, therefore, considers the parties' arguments as to whether Hernden's allegations suffice to maintain Monell liability based on actions of the Board—and if they do, then the Court finds that those allegations suffice to maintain Monell liability against the District.

**A. Whether Hernden Plausibly Alleged that Bednard Email Was Board's Official Policy**

A "local governing bod[y] . . . may be sued for having caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'"  Adkins v. Bd. of Educ. of Magoffin Cnty., Ky., 982 F.2d 952, 957 (6th Cir. 1993) (quoting Monell, 436 U.S. at 690). The "critical question" in this analysis is "whether the person committing the act did so pursuant to official policy."  Id.  "[O]nly local officials who have final policymaking authority may subject the local governing body to § 1983 liability, and whether an official has such final authority is a question of state law."  Id. (punctuation modified).

Hernden's complaint presents Bednard's act of sending an email to the DOJ as an official decision enacted by the Board.  See Compl. ¶ 60.  The District argues that there could not have been any such final decision made here because, as a matter of Michigan law, school boards "only act through public meetings," and their "actions can only be accomplished by a majority of the Board by passing a resolution."  Mot. at 8 (citing Mich. Comp. L. § 380.1201 ("The business that the board of a school district is authorized to perform shall be conducted at a public meeting of the board held in compliance with the open meetings act. . . .  An act of the board is not valid unless the act is authorized at a meeting by a majority vote of the members elected or appointed to and serving on the board and a proper record is made of the vote.")).  The act referenced in § 380.1201—the Michigan Open Meetings Act (OMA), Mich. Comp. L. 15.261 et seq.—requires that "[a]ll decisions of a public body must be made at a meeting open to the public."  Mich. Comp. Laws § 15.263(2).

The District asserts that "no individual board member can bind the School District or promulgate Policy"; rather, "[i]t takes a quorum and a majority vote, which is then memorialized in minutes or a resolution."  Mot. at 13 (citing Tavener v. Elk Rapids Rural Agr. Sch. Dist., 67 N.W.2d 136, 139 (Mich. 1954)) (finding in favor of architect's successor in contractual dispute

5

with school board over fees due based in part on board minutes, explaining: "Defendant [school board] speaks only through its minutes and resolutions. We have repeatedly held that where records are required to be kept, as they are by the defendant pursuant to [state law], their import cannot be altered or supplemented by parol testimony."). The District concludes that the attribution of statements made by one member to an entire organization "is not how legislative bodies function." Br. in Supp. Mot. at 12.

Hernden responds that—even if doing so is illegal—school boards can undertake official acts outside of public meetings. Br. in Supp. Resp. at 6. She submits that public bodies in Michigan must hold an open meeting to make a "decision" under the OMA. Id.[6] In Hernden's view, public bodies can make "decisions" under the OMA even if they do not hold formal, open meetings. Id. at 6–8 (citing Booth Newspapers, Inc. v. Univ. of Mich. Bd. of Regents, 507 N.W.2d 422, 429–430 (Mich. 1993) (finding that use of subcommittee meetings to narrow list of candidates for university president "must be considered closed session decisions under the OMA" violative of the act, and rejecting argument that "open meetings are only required when 'formal' voting occurs" because "the OMA's plain meaning clearly applies to 'all decisions' by public bodies"); Nicholas v. Meridian Charter Twp. Bd., 609 N.W.2d 574, 578 (Mich. Ct. App. 2000) (explaining that township committee meetings were subject to OMA, stating: "When a quorum of the members of a public body meet to consider and discuss public business, it is a 'meeting' under [the OMA . . . .] Thus, if members of a public body gather, a quorum being present, for the purpose of deliberating, the meeting is subject to the provisions of the OMA even if there is no intention that

---

[6] See also Mich. Comp. Laws § 15.262(d) (defining "decision" as "a determination, action, vote, or disposition upon a motion, proposal, recommendation, resolution, order, ordinance, bill, or measure on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy").

the deliberations will lead to the rendering of a decision on that occasion."), abrogated on other grounds by Speicher v. Columbia Twp. Bd. of Trustees, 860 N.W.2d 51 (Mich. 2014)).  Hernden concludes that, "when a quorum of board members deliberates on a matter of public policy, and then acts based on those deliberations, they have nevertheless reached a 'decision.'"  Id. at 7.

The Court agrees with Hernden that the District cannot escape allegations that the Board made a final decision potentially subjecting it to Monell liability merely because there is no vote or resolution on record.  Under Michigan law, a local governing body like the Board can reach an official "decision" even if does not follow prescribed procedures.  See Booth, 507 N.W.2d at 429–430; Nicholas, 609 N.W.2d at 578.  The District's case law—demonstrating that courts rely on resolutions to determine the terms of contracts executed by governing bodies—does not contradict this understanding.  See Tavener, 67 N.W.2d at 139.

The "critical question" is whether Hernden has plausibly alleged that Bednard's act of emailing the DOJ constituted "official policy" made by "local officials who have final policymaking authority," Adkins, 982 F.2d at 957 (punctuation modified), such that the Board made "a deliberate choice to follow a course of action," Pembaur, 475 U.S. at 483.

Hernden alleges that Bednard's email "was an official act of the Board" that "reflects joint action by each of its members" and "reflects a collective decision of the Board."  Compl. ¶ 60.  To support the plausibility of this inference, Hernden notes that (i) her "initial email"—the one ultimately forwarded to the DOJ—was sent to "the entire Board," not Bednard alone; (ii) Bednard subsequently advised the Board that he had forwarded Plaintiff's email to the DOJ; and (iii) Bednard's email to the DOJ uses the plural "we" and "our" and concludes by stating that a DOJ response would be "greatly appreciated by our board, administration, and community."  Br. in Supp. Resp. at 8–9 (quoting Bednard Email at PageID.26) (emphasis in Br. in Supp. Resp.).

Hernden concludes that Bednard was speaking on behalf of the Board in his official capacity.  Id. at 9 (citing Hindel v. Husted, 875 F.3d 344, 347 (6th Cir. 2017) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")).

Also supportive of Hernden's theory is that, in his email to the DOJ, Bednard identified himself as president of the Board.  See Bednard Email at PageID.26.

The District considers the allegation implausible that the Board jointly agreed for Bednard to email the DOJ, see Mot. at 9, 13–14; Reply at 1–2; however, the District makes no attempt to weaken the allegations identified by Hernden in support of her inference.  The Court finds it plausible that—based on Bednard (i) telling the DOJ that its assistance would be appreciated by "our board," (ii) speaking in the first-person plural voice, (iii) signing the email as the Board's president, and (iv) sharing the email with the Board after he sent it—the email "reflects a collective decision of the Board."  Compl. ¶ 60.  These allegations suffice to maintain a claim against the District at the pleadings stage.[7]

---

[7] Similar allegations have withstood a motion to dismiss.  See Williams v. Lawrence Cnty. Career & Tech. Ctr., No. cv-17-620, 2017 WL 4842549, at *10 (W.D. Pa. Oct. 26, 2017) (denying motion to dismiss municipal liability claim against career and technical center allegedly controlled by organization comprised of representatives of school districts because it was "plausible that representatives from each of the Defendant School Districts were delegated authority to act on behalf of the School Districts" and "plausible that the decisions of the representatives and the bases for them were ratified by the School Districts").  Similar claims have also withstood summary judgment motions.  See Ritchie v. Coldwater Cmty. Sch., 947 F. Supp. 2d 791, 810–811 (W.D. Mich. 2013) (denying summary judgment to school board on First Amendment claim based on board president's purported policy of "cutting off" speech where president "was responsible for running School Board meetings, including applying School Board policies and rules during meetings," which might allow reasonable jury to conclude his acts "constituted School Board policy"); Rodrigues v. Vill. of Larchmont, N.Y., 608 F. Supp. 467, 476 (S.D.N.Y. 1985) (denying summary judgment to village based on "joint edicts or acts" of board of zoning appeals that "may fairly be said to represent official policy").

The Court denies the District's motion to dismiss on this ground and finds that Hernden

has a surviving <u>Monell</u> claim based on Bednard's email alleging collective Board action.

**B. Whether Hernden Plausibly Alleged that Board Had Custom of Failing to Act in Response to First Amendment Violations**

The parties also debate whether the Board had a custom of failing to act in response to First

Amendment violations—i.e., whether the Board had "a custom of tolerance or acquiescence of

federal violations." <u>Winkler v. Madison Cnty.</u>, 893 F.3d 877, 901 (6th Cir. 2018) (punctuation

modified). This question determines whether there is municipal liability based on only Bednard's

email, or on Pyden's email, too. "To state a municipal liability claim under an 'inaction' theory,

[Hernden] must establish":

> (1) the existence of a clear and persistent pattern of [First Amendment violations] by [Board members];

> (2) notice or constructive notice on the part of the School Board;

> (3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

> (4) that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation.

<u>Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.</u>, 103 F.3d 495, 508

(6th Cir. 1996) (affirming grant of summary judgment to defendant school board based on alleged

"failure to act" in response to allegations of teacher sexually abusing students because the evidence

did not show "that the School Board, as an official policymaking body, had a 'custom' that

reflected a deliberate, intentional indifference to the sexual abuse of its students," even if "board

members, individually, might have been recklessly passive in the performance of their duties,"

explaining: "Their failure independently to investigate further is simply not 'board action' and certainly does not amount to a custom on which constitutional tort liability may be affixed.").

"A 'custom' for purposes of <u>Monell</u> liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" <u>Id.</u> at 507 (quoting <u>Monell</u>, 436 U.S. at 691). The plaintiff must plausibly allege that "the need to act is so obvious that the School Board's 'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to [the plaintiff's] constitutional rights." <u>Id.</u> at 508.

The District argues that Hernden has not alleged municipal liability on the basis of a school board policy or custom at all.  <u>See</u> Mot. at 14–17 (citing <u>Claiborne</u>, 103 F.3d at 508).  Hernden responds that the Board is liable under <u>Monell</u> for "permitting an ongoing custom of allowing Board members to retaliate against members of the public for speaking messages with which they disagree." Br. in Supp. Resp. at 10.[8]

Hernden argues that the Board knew about, but failed to correct, the unconstitutional actions of Pyden and Bednard.  Hernden submits that the Board had knowledge of Pyden's email to Hernden's supervisor—based on the fact that Hernden had sent earlier emails to the entire Board complaining about Pyden—and yet "the Board took no adverse action against Defendant Pyden for her actions."  Br. in Supp. Resp. at 11–12; <u>see also</u> <u>id.</u> at 12 (arguing that the Board "appears

---

[8] The cases cited by Hernden in support of this general proposition featured distinguishable issues that do not indicate that <u>Monell</u> liability is appropriate in this case.  <u>See</u> Br. in Supp. Resp. at 10 (citing <u>Barrow v. City of Hillview, Ky.</u>, 775 F. App'x 801, 815 (6th Cir. 2019) (reversing grant of summary judgment to city on retaliation claim where district court applied standard for <u>Monell</u> theory of "existence of an illegal official policy" though pleadings asserted <u>Monell</u> theory that "an official with final decision making authority ratified illegal actions") (punctuation modified); <u>Haverstick Enterprises, Inc. v. Fin. Fed. Credit, Inc.</u>, 803 F. Supp. 1251, 1256 (E.D. Mich. 1992), <u>aff'd</u>, 32 F.3d 989 (6th Cir. 1994) (dismissing municipal defendant where plaintiffs "made merely conclusory allegations that the City of Romulus was grossly negligent in failing to train, supervise, and discipline its police")).

to have done nothing to remedy the issue or prevent similar breaches moving forward"). Further, given that "the Board does not appear to have taken action against Defendant Bednard for [his] constitutional violation," Hernden argues that "[a]t best, this demonstrates the Board acquiesced to Defendant Bednard's conduct; at worst, it represents an endorsement of it." Id. at 13–14. Hernden also notes that Hernden's "communications with the Board were related to a matter of public interest"—i.e., COVID policy. Id.

The District responds that the Board as a whole has no legal obligation to respond to the comments made by a single member, who retains individual rights under the First Amendment. Reply at 3. The District also cites case law to argue that officials are not liable under § 1983 for failing to act in response to an alleged violation.[9] The District concludes that "after-the-fact approval of the course of action, which did not itself cause or continue a harm against the plaintiff, is insufficient to establish a Monell claim" because such an outcome would effectively make the [District] liable on the basis of respondeat superior, which is specifically prohibited by Monell." Reply at 4 (quoting Spencer v. City of Hendersonville, 487 F. Supp. 3d 661, 694 (M.D. Tenn.

---

[9] See Reply at 3–4 (citing King v. Zamiara, No. 4:02–cv–141, 2009 WL 1067317, at *2 (W.D. Mich. Apr. 21, 2009) (explaining that "an official is not subject to supervisory liability for mere failure to act, even where that failure to act includes failure remedy the ongoing effects of a constitutional violation" and granting summary judgment to official where evidence showed he "was aware of Plaintiff's circumstances but he did not remedy them," which "conduct falls squarely outside the perimeter of § 1983 supervisory liability"); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (finding that claims of supervising officials' denial of administrative grievances, "failure to remedy the alleged retaliatory behavior," and "failure to intervene" were insufficient to allege § 1983 liability because there was "no allegation that any of these defendants directly participated, encouraged, authorized or acquiesced in the claimed retaliatory acts"); Lowe v. Prison Health Serv., No. 13-10058, 2014 WL 584944, at *6 (E.D. Mich. Feb. 14, 2014) (granting summary judgment, explaining: "Supervisors are not liable under § 1983 merely because they are aware of an alleged violation and fail to act—this holds even if the omission is the failure to remedy the ongoing effects of a constitutional violation.") (punctuation modified)).

2020), aff'd sub nom. Spencer v. City of Henersonville, TN, No. 20-6168, 2021 WL 8016828 (6th Cir. Oct. 8, 2021) (punctuation modified).

To the extent that Hernden seeks to attach liability to the District based on Pyden's alleged unconstitutional act, Hernden fails to establish Monell liability for multiple reasons.  Her complaint does not explicitly allege any "policy" or "custom" of Board inaction at all; where Hernden's complaint discusses "policy," she refers to the Board's policies related to COVID.  See, e.g., Compl. ¶ 27.  This failure merits dismissal on its own.  See, e.g., Armstrong v. U.S. Bank, No. C-1-02-701, 2005 WL 1705023, at *6 (S.D. Ohio July 20, 2005) (dismissing Monell claim brought on inaction theory where plaintiff "ma[de] no allegation explaining what the City's alleged policy [was]").

Hernden's complaint also does not allege that the Board had any knowledge of Pyden's email to Hernden's supervisor, nor does she plead facts that plausibly allow for that inference. Hernden alleges that Pyden individually emailed Hernden's supervisor.  Compl. ¶¶ 19, 35. Hernden also identifies emails that Hernden exchanged with Pyden prior to Pyden's email to Hernden's supervisor, but she does not indicate that other Board members had any involvement in those exchanges, and no other Board members were copied on the latest thread ultimately forwarded to Hernden's supervisor.  Id. ¶¶ 19, 33; Pyden Email at PageID.17–20.  Hernden, therefore, has not alleged that the Board was on notice of Pyden's email to Hernden's supervisor. See Claiborne, 103 F.3d at 508; Thorpe v. Breathitt Cnty. Bd. of Educ., 8 F. Supp. 3d 932, 938–939 (E.D. Ky. 2014) (granting summary judgment to school board on claim of indifference to sexual abuse under inaction theory where plaintiff "failed to show that the Board itself [was] the wrongdoer" and did "not put forth any evidence to show that the Board itself was on notice of [employee's] misconduct") (punctuation modified, emphasis in original).

12

As discussed, Hernden has plausibly alleged that the Board had knowledge of—and took joint action in—the Bednard email.  But Pyden sent her email in December 2020—some ten months before Bednard emailed the DOJ in October 2021.  Hernden cannot rely on the later Bednard email to support an inference that the earlier email from Pyden—which involved no other alleged Board involvement—sprang from a Board policy or custom.  Thus, Hernden has not alleged a "a clear and persistent pattern" of First Amendment violations that apply to Pyden's one-time email sent prior to Bednard's email to the DOJ.  Claiborne, 103 F.3d at 508 (punctuation modified).  A single alleged constitutional violation—of which no other Board members even had alleged knowledge—is insufficient to establish a custom of tolerance or acquiescence.  See, e.g., City of Okla. City v. Tuttle, 471 U.S. 808, 823–824 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); Thomas v. City of Chattanooga, 398 F.3d 426, 432–433 (6th Cir. 2005) (granting summary judgment to school board and rejecting "attempt[] to infer a municipal-wide policy based solely on one instance of potential misconduct"); Armstrong, 2005 WL 1705023, at *6 (dismissing claim brought on inaction theory where complaint "mention[ed] one other incident" relating to the alleged misconduct of excessive force, explaining that "an isolated incident alleged in a complaint . . . is not sufficient to show a city policy").

And having failed to allege that other Board members even knew about Pyden's email, Hernden has not plausibly pleaded that the Board "tacit[ly] approv[ed] of the unconstitutional conduct" such that they were deliberately indifferent to First Amendment violations.  Claiborne, 103 F.3d at 508 (punctuation modified).

Further, Hernden's complaint lacks any allegations that some unidentified Board policy "caused" Pyden to email Hernden's supervisor, which again dooms her <u>Monell</u> claim brought on an inaction theory.  <u>See</u> <u>id.</u> ("[Plaintiff] also fails to allege the required causal connection between her alleged injury and the City's alleged policy.").

In sum, Hernden has failed to satisfactorily allege that liability extends to the District based on Pyden's email.  She has not alleged (i) the existence of a custom of tolerance of or acquiescence to "a clear and persistent pattern" of First Amendment violations, (ii) Board members' notice of such violations, (iii) Board members' tacit approval of such violations, or (iv) a causal connection between the supposed policy and Pyden's decision to send an email.  See <u>Claiborne</u>, 103 F.3d at 508.  The Court grants the District's motion to dismiss to the extent that Hernden's claims for municipal liability are based on Pyden's alleged unconstitutional act.

### III.  CONCLUSION

For the reasons explained above, the Court grants the District's motion in part and denies the District's motion in part (Dkt. 17).

SO ORDERED.

Dated:  June 22, 2023                                    s/Mark A. Goldsmith
    Detroit, Michigan                              MARK A. GOLDSMITH
                                            United States District Judge